Cindy Miller
141 N. 1st St W
Snowflake, AZ 85937
Cindylmiller1@gmail.com
Pro se



FILED

DEC 27 2023

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CINDY MILLER, PRO SE

141 N 1ST ST W, APT C

SNOWFLAKE, AZ 85937

vs.

CAROL LYNN QUATTROCIOCCHI

29 LAKEWOOD CIRCLE

NEWARK, DE 19711

Case No.: **23 - 1 4 6 9 -**

**COMPLAINT**

**JURY TRIAL DEMANDED**

**JURISDICTION**

Jurisdiction is based on based on diversity of citizenship. See 28 U.S.C. 1332.

**VENUE**

The defendant lives in Newark, De

**STATEMENT OF FACTS**

The plaintiff in this complaint, Cindy Miller, is a victim of extreme Intentional Emotional Abuse from her younger sibling, defendant, Carol Quattrociocchi. This cruel abuse has been ongoing for the past three years. It began with the defendant ending the plaintiff's ability to communicate with their father. The plaintiff and her father had a very close relationship. The defendant became abusive when the plaintiff asked that she wear a mask around their father.

The plaintiff, Cindy Miller, resides in Navajo County in Snowflake, Arizona.

The plaintiff is 66 years old and is a retired professional accountant. She had been visiting her dad and family in Delaware at least yearly for the past several years.

The defendant, Carol Quattrociocchi, lives in New Castle County, Delaware.

COMPLAINTJURY TRIAL DEMANDED - 1

Defendant, Carol Quattrociocchi, is 59 and is a successful Real Estate Broker in Delaware Maryland. She had the Power of Attorney for their father. She wielded 100% control over their father. She behaved as though being a POA meant that she was the only person who had the authority to make any decisions regarding him, his finances, or his healthcare.

The defendant and plaintiff are sisters.

Their father James K. Miller was a resident of New Castle County. He was 92 years old and lived by himself in a subsidized Senior Apartment building in Wilmington, De.

In November 2019, the Defendant offered to finance a trip for the plaintiff to travel to Delaware to spend three weeks with their father visiting with him in his apartment. The plaintiff believed that the defendant thought that the trip was necessary to help their father cope with losing his drivers license and his freedom to come and go as he pleased and that it would be helpful if the plaintiff could spend some quality, uninterrupted time with their father. The father, James Miller, had recently had his driver's license revoked for failing the doctor's quick "in office" DMV dementia disability test and was having emotional issues with the loss of his freedom.

During November 2019, while visiting her father, the Plaintiff enjoyed many discussions with her father and realized that he was still a great conversationalist when he was given the time to fully think things through. In the three weeks the Plaintiff was visiting, she and her father enjoyed several dinners out and she showed him how to order groceries using Instacart and Door Dash. They even found a barber that would come to his apartment and cut his hair. Plaintiff had the father's apartment wired for WIFI for better TV and internet for him and hung pictures, purchased some pants that fit his thinner body and shopped for basic cleaning supplies to have on hand in his apartment.

During her visit, the plaintiff noticed that there was no food in the cabinets or in the refrigerator in his apartment. This was because the defendant had instructed him to eat at the resident kitchen for almost all meals. The plaintiff tried the meals from the kitchen and thought that the food did not resemble restaurant quality food, in fact, it was more like the quality would be at a jail or prison. A few of the other residents told the plaintiff that they were concerned about the fact that he didn't have food in his apartment. Plaintiff noticed that her father had lost weight since she had last seen him last approximately a year before when he was still able to drive and go to restaurants on his own.

COMPLAINTJURY TRIAL DEMANDED - 2

During her visit, the plaintiff inquired about home care available in the area and hired a home care person, Kendra, to come into her father's apartment starting with a three hour visit twice a week. The plans made by the plaintiff and defendant were to immediately apply for Veteran's and Medicaid assistance to help pay for more hours of home care. Several of the residents in the building were already doing this. The caretaker that the plaintiff hired liked to cook and they had discussed the possibility that of her preparing some home cooked meals for her father and to be involved in keeping a good supply of fresh and delicious food available on hand for him in the apartment.

During her visit, the plaintiff showed her father that they could order groceries through Insta cart and or Door Dash and the groceries would be delivered right to the main front door of his residence. They did this several times during her visit and it went very well. The plaintiff could do this for her father from where she lived in Arizona. There are four siblings that live close to their father's residence in Delaware but only the defendant was actively involved in his care. The defendant had complete authority and control over him and there was minimal contact and involvement in the daily life of her father from the other siblings.

During her visit, the plaintiff learned that her father wanted to begin attending a church he picked that was very close to his apartment, but he needed a reliable ride there. Plaintiff promised him she would order an Uber for him to take him to church and back every Sunday.

The plaintiff believes that her father should have all the good food he could realistically desire, especially since his budget should have made him able to afford it. He was in excellent health for his age and had just had a perfect dental visit with not one cavity in any of his full set of teeth. He had no dietary restrictions and greatly enjoyed good food. The plaintiff thought that her father should not be expected to live on instant oatmeal (as ordered by the defendant) and on the poorly tasting food served in the resident kitchen every day.

Nine months after her trip to Delaware, in August, 2020, the plaintiff purchased a Facebook Portal video device and mailed it to her father so that she could video conference with him using Facebook. It was possible for her to have 24-hour contact with her father this way. The Facebook portal had a camera that would follow the speaker if he moved around the room in the apartment. The plaintiff had been struggling with the defendant when she tried to stay involved in her father's quality of daily life

COMPLAINTJURY TRIAL DEMANDED - 3

by following through on her plans to help from a distance. She thought that at least she could continue the long conversations with her father to keep his dementia from progressing and to keep his mind active. She was looking forward to having this connection with her father because it was extremely enjoyable for her to talk with him and she knew no one else in the family had the time and patience to speak with him at a pace that worked best for him.

During their long talks, the plaintiff realized just how much she had in common with her father and she greatly enjoyed the many uninterrupted and thought-provoking conversations they had. The plaintiff's father even told her for the first time that he had always thought that he and the plaintiff were the most alike in the family. This meant a great deal to the plaintiff, and she looked forward to many more long talks with her father.

The plaintiff tried to convince her father to move to Arizona to live with her. She was retired and had the time to spend with him and could eventually get him his own place right across the courtyard from where she lived. She did not want to move to Delaware to be with him because when she had lived there before, she had problems with asthma, a condition she had had since early childhood. The defendant said that it was not possible for him to relocate to Arizona because the hospital was too far away. The plaintiff lives in a rural area and the hospital is 30 minutes away. Their father had no medical conditions that would require him to have many emergency visits to an ER.

The plaintiff believes that their father was not a confrontational person and would not speak his mind to the defendant. He was afraid of her. The other siblings (two brothers and one sister) are also not willing to confront the defendant or question her authority in any way. During her visit, her father asked her several times to take him to the bank to find out what was happening to his money. He didn't know how much was in his account, but he said he wanted to spend whatever money was in there and have a good time while I was visiting. The plaintiff knew that it would be a huge mistake to do this for her father because the defendant would be very triggered by it. She did tell the defendant more than once about her father's concerns over his money at the bank but the defendant basically ignored her.

In August 2020, Carol Quattrociocchi opened and plugged in the Facebook portal received in the mail from the plaintiff. She placed the first call on the Facebook Portal from their father's apartment to the plaintiff's residence in Arizona.

COMPLAINTJURY TRIAL DEMANDED - 4

In this first exchange, the plaintiff took note that the defendant and her daughter were not wearing surgical masks while visiting their father and it was at the beginning of the Covid pandemic when it was imperative that senior citizens be extra careful. Later that day, the plaintiff asked the defendant to please wear a mask, "just to be safe". The defendant went into a rageful fit after that. She proceeded to disconnect the Facebook Portal in their father's apartment and also blocked the plaintiff from being able to reach her father on his cell phone. The defendant also proceeded to disconnect the equipment running the WIFI the plaintiff had installed in their father's apartment.

The defendant used her personal email to tell the plaintiff what she was going to do to her in retaliation for the request to wear a mask. Her complete ease and confidence in being an outrageously cruel person is demonstrated by her willingness to document her words in her emails. She has no concept of being held accountable for this cruel behavior.

On December 24, 2021, the plaintiff learned via a phone call from another sister (Sue Foster) that her father had passed away a "couple days earlier" after having spent some time in the hospital. The sibling said that she didn't know their father had been in the hospital. The plaintiff didn't know that he had fallen and broken his hip while alone in his apartment several weeks before. She was never contacted about her father's accident that happened while by himself, in his apartment. She was told by the sibling that he was found by the defendant three hours after he had been lying on the floor, in great pain from the broken hip.

The defendant intentionally emotionally abused the Plaintiff by taking away her opportunity to see her father alive and to participate in decisions made in the hospital about the very continuance of his life. Decisions in the hospital about their father's life in the last days of their father's life were made by the defendant only. The plaintiff believes that there were decisions made solely by the defendant about keeping her father on life support at the hospital.

In May 2022, a picture of the defendant holding an urn over a stream bed was posted to Facebook. It turned out to be the defendant and two of her brothers illegally dumping their father's ashes into a stream in W, Va. The plaintiff was never notified about the plans for the ashes or given a chance to have some ashes for herself to keep and cherish.

COMPLAINTJURY TRIAL DEMANDED - 5

1    To this day, December 18, 2023, the plaintiff still doesn't know why her father died and no one

2    will tell her anything for certain about how and why it happened.

3

4    **LEGAL BASIS**

5    The cause of action brought by the plaintiff is intentional infliction of emotional distress.

6    Delaware applies Restatement (second) of Torts 46 in defining the elements of intentional emotional

7    distress as "One who by extreme and outrageous conduct intentionally or recklessly causes severe

8    emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the

9    other results from it, for such bodily harm." *Cooper v. Bd of Educ. Of Red Clay Consol Sch. Dist.,* 2009

10   WL2581239 at *3(Del. Super., Aug 20, 2009)

11   "The intentional infliction of severe emotional distress may provide the legal predicate for an

12   award of damages, even in the absence of accompanying bodily harm if such conduct is viewed as

13   outrageous." *Cummings v. Pinder*, 574 A.2d 843,845 (Del.1990). "The tort does not exist to provide a

14   cause of action against someone who exercises poor judgement. It exists to hold accountable someone who

15   does something atrocious and intolerable." *Farmer vs. Wilson*, 1992 WL 331450, at *5 (Del Super. Sept 29,

16   1992.

17   The plaintiff has been suffering from unbearable distress because of losing her father in the way

18   described and for not having the opportunity to be involved in the medical decisions that were made at the

19   end of his life. She feels that her father may still be alive if her sister had not been the only one making

20   decisions for him. She thinks that decisions were made without input from anyone else in the family on

21   whether or not to continue her father's life support efforts while in the hospital. The defendant had

22   admitted to the plaintiff in previous text messages that she was uncomfortable in situations involving

23   medical visits with their father because she "didn't know very much about that stuff". Although the

24   defendant is a successful real estate broker, her knowledge and sophistication in other matters not involving

25   a real estate transaction is minimal and she had no right and no qualifications to make the decisions that she

26   did regarding their father.

27   For almost two years, (2020 through 2022), the plaintiff was prevented from having the wonderful

28   conversations she was looking forward to when her ability to communicate with him was ended by the

COMPLAINTJURY TRIAL DEMANDED - 6

defendant. She will never get to have those long talks with him ever again. This is a pleasure in life that no one should be able to withhold from another.

The plaintiff suffered mental and physical injuries because of this abuse from the defendant, both of which are likely to be permanent conditions. The plaintiff was already alarmed at the beginning of the covid pandemic because several years earlier, she had been rushed to ER by ambulance twice because of respiratory distress brought on by her asthma condition. She was fearful that this could happen to her if she caught covid and there would be no oxygen available at the rural hospital because of the pandemic. It is a terrifying experience to not be able to breathe and something the victim never forgets.

In August 2020, the plaintiff suffered a deep vein thrombosis in her right leg and was unable to walk on it for two months. The leg still causes her different levels of discomfort, and there is always concern about the thrombosis happening again. There is permanent damage to the right leg, and it is bigger than her left leg. Her leg will always be damaged and deformed because of the injury. This was not a previous condition and was most likely caused by the extreme stress brought on by the defendant's extreme emotional abuse.

The plaintiff felt outraged and powerless about not being able to keep her father safe from catching covid from the defendant. The defendant visited the apartment building where their father lived twice a day and used a communal elevator to go to the fourth floor where he lived. This was during the time when the fear of covid was at the highest point and the elderly were being isolated to be kept safe from catching it. The plaintiff was shocked that the defendant was able to go in and out of the building that housed the elderly without wearing a surgical mask and assumed the employees that watched the main entrance of the building were afraid of confronting the defendant because of her aggressive personality. The plaintiff contacted the governor, the health department and the building owners and was finally able to alert the owners about the problem but didn't know if anything was done to make her wear a mask. The defendant was known for paying people cash to make them see things her way. The plaintiff filed a complaint with Adult Protective Services about the fact that her father had no food in his home and that he was afraid of the defendant, but the APS investigator made a decision that was more favorable to the defendant. The defendant told the APS investigator that the plaintiff was simply after their father's money and the case was closed.

The plaintiff was going to attempt to get guardianship of their father to override the defendant's POA because she refused to let him down on this important life or death issue. However, after the leg injury, she realized she couldn't handle any additional stress without taking a chance of seriously harming her own health again. She felt outraged and powerless and that she had let her father down.

### **RELIEF SOUGHT**

The plaintiff wants to know, in writing, what happened to her father and exactly why he died. It is extremely stressful and unfair to her to not know anything about what happened to him. Th plaintiff wants to know if he was aware of what was happening when he was hospitalized and if he asked for her. This is an emotional pain that bothers her every single day.

The plaintiff is seeking 1.5 million dollars in compensatory and punitive damages. Her leg may need continual care and possibly surgery. The plaintiff needs mental therapy to work through her feelings of rage. People who know her say she has become rude and isolated after losing her father this way. Punitive damages are necessary to send a message to the defendant and to those who she influences to be like her. The defendant's daughter actually sent the plaintiff an unprovoked Facebook message telling her that she hopes she ends her life. This cruel behavior should not be allowed to continue without accountability.

Submitted by Plaintiff

Cindy Miller

December 18, 2023

_____

COMPLAINTJURY TRIAL DEMANDED - 8

## VII. CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; and (3) complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

December 19, 2023
Dated

Cindy Miller
Plaintiff's Signature

Miller, Cindy L
Printed Name (Last, First, MI)

141 N 1st St N Apt C    Snowflake, AZ 85937
Address                 City        State   Zip Code

928-551-1319
Telephone Number

cindylmiller1@gmail.com
E-mail Address (if available)

*List the same information for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

COMPLAINTJURY TRIAL DEMANDED - 9

# Exhibits 1

# through 10

COMPLAINTJURY TRIAL DEMANDED - 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1/8/2021                                         Gmail - Dad

## M Gmail                          cindy miller <cindylmiller1@gmail.com>

**Dad**
33 messages

cindy miller <cindylmiller1@gmail.com>                    Fri, Aug 7, 2020 at 5:59 PM
To: carol quattrociocchi <carol.quattro01@gmail.com>

Hi. Please wear a mask around Dad. Just to be on the safe side.

carol quattrociocchi <carol.quattro01@gmail.com>          Fri, Aug 7, 2020 at 9:06 PM
To: cindy miller <cindylmiller1@gmail.com>

Excuse me?? Exactly who are you, to be telling me, the one who goes to his apt twice a day to help him use the cathiert
so he doesnt get sick again.
The one who takes him his food and does everything for him. I am not sure why you feel you have the right to say these
things. I take my temperature and his daily. Do you really think he wants to see, the only person he sees, wearing a
mask? He already cant understand why he doesnt get to see people.

I really try to help him communicate with you,  then you find a way to screw that up.  So from now on, I guess it's best of
luck for you.  When he disconnects the portal again and puts it under the table and has no idea how to use it, you will
have to figure it out.  You really have no idea how bad his memory issues are.

I appreciate you reminding me that being nice really isnt a good idea.

[Quoted text hidden]

cindy miller <cindylmiller1@gmail.com>                    Sat, Aug 8, 2020 at 3:33 AM
To: carol quattrociocchi <carol.quattro01@gmail.com>

I am turning you in for elder abuse, thanks for all the evidence

[Quoted text hidden]

cindy miller <cindylmiller1@gmail.com>                    Sat, Aug 8, 2020 at 3:39 AM
To: carol quattrociocchi <carol.quattro01@gmail.com>

I talked with him , I don't think his memory issues are as bad as you think. He has shut down cause he doesn't want to
communicate with you
[Quoted text hidden]

cindy miller <cindylmiller1@gmail.com>                    Sat, Aug 8, 2020 at 3:40 AM
To: carol quattrociocchi <carol.quattro01@gmail.com>

There's a high penalty for abusing elders and you've done it all
[Quoted text hidden]

cindy miller <cindylmiller1@gmail.com>                    Sat, Aug 8, 2020 at 3:42 AM
To: carol quattrociocchi <carol.quattro01@gmail.com>

You will not be getting away with it this time. I promise
[Quoted text hidden]

cindy miller <cindylmiller1@gmail.com>                    Sat, Aug 8, 2020 at 3:48 AM
https://mail.google.com/mail/u/0?ik=bo58eeebc2&view=pt&search=all&permthid=thread-a%3Ar-3647155427565504352&simpl=msg-e%3Ar83255636...    1/5

Exhibit 1

COMPLAINTJURY TRIAL DEMANDED - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1/8/2021                                                        Gmail - Dad

To carol quattrociocchi <carol.quattro01@gmail.com>

Morgan was sitting 3 feet from him with no mask. Did she just get off a plane flight from a virus hot spot? You are ignorant
beyond belief.
[Quoted text hidden]

---

cindy miller <cindylmiller1@gmail.com>                                    Sat, Aug 8, 2020 at 4:07 AM
To: carol quattrociocchi <carol.quattro01@gmail.com>

You need to get with a mental health professional to find out why you have no memories of anything before going over to
Saudi Arabia. You suffered some kind of trauma that has f'd you up somehow. You have destroyed the family with your
brutality.
[Quoted text hidden]

---

carol quattrociocchi <carol.quattro01@gmail.com>                          Sat, Aug 8, 2020 at 5:50 AM
To: cindy miller <cindylmiller1@gmail.com>

Hahaha
[Quoted text hidden]

---

carol quattrociocchi <carol.quattro01@gmail.com>                          Sat, Aug 8, 2020 at 5:54 AM
To: cindy miller <cindylmiller1@gmail.com>

Shut the fuck up you worthless piece of shit how dare you act like you are concerned. He has no money for you to steal
from him so stop acting like you care.  If you cared you would find a way to make it out to see him but all you want to do is
try and tell ME what to do.
I am not the one who has a no interaction with the rest of my family.

Dont you dare talk to me about my children.  She has been here for long enough and has taken a covid test for work,
have you......wait you dont work.

Lose my email address we are done again
[Quoted text hidden]

---

carol quattrociocchi <carol.quattro01@gmail.com>                          Sat, Aug 8, 2020 at 5:55 AM
To: cindy miller <cindylmiller1@gmail.com>

Hahaha away with taking care of my father???? And what do you do for him.....nothing.

Dont promise anything unless you can do something.
[Quoted text hidden]

---

carol quattrociocchi <carol.quattro01@gmail.com>                          Sat, Aug 8, 2020 at 5:59 AM
To: cindy miller <cindylmiller1@gmail.com>

Go ahead and have them come out and when they do and he is put into a nursing home......then that's on you.

Elder abuse, you are a joke exactly how do I do that?
Here's your proof, I go to his house twice A DAY to make sure he uses the cathiert, I being him food I hired an aide to go
twice a week.  Do you really know what you are saying

Have a good life, I am hoping my memory forgets who you are!!!
[Quoted text hidden]

---

carol quattrociocchi <carol.quattro01@gmail.com>                          Sat, Aug 8, 2020 at 6:01 AM
To: cindy miller <cindylmiller1@gmail.com>

You are a joke, you really think you know by talking with him twice.  Are u a doctor?  Have you spoke with his doctor?
Have you been here lately when he doesnt remember how to use the cathiert really

https://mail.google.com/mail/u/0?ik=bb58eeebc2&view=pt&search=all&permthid=thread-a%3Ar-3647155427565504352&simpl=msg-a%3Ar83255636...    2/5

Exhibit 1 (continued)

COMPLAINT JURY TRIAL DEMANDED - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**Sue, Carol, Dad...**
Group MMS

Carol Q

Ok thanks

2/22/20 5:51 AM

**Carol Q**

I am leaving for st thomas this morning for a week please can someone go to dads everyday and check on him.  He says he takes his medicine but normally he doesnt.  Normally I go make sure he takes medication, make sure tv working, empty is bathroom trash daily ( check make sure min 3 caths are in there used) there r new trash bags in bottom of table in bathroom,

+    Type a Group Message...      

## Exhibit 2

**2/22/20**

Defendant has decided she doesn't like the home care person (Kendra) that was selected by the plaintiff and wants to let her go.  The defendant thought it was sufficient care for their father to have her make quick daily visits to his apartment.  The defendant travelled out of the country often and would demand that the other siblings take over his care while she was gone. The siblings were not always compliant with her demands.



yesterday. I had him take his
medicine today. Is anyone
going to pick him up today?

2/23/20 10:20 AM

You may have to call the home
care company if no one
responds. He should have
enough $ to cover it.

**Carol Q**

To cover what? So did they tell
u status of the 300 deposit?

Ease up please. I don't know
why you get so offended by t'
idea of a solution that I came
up with. Get over yourself, your

 Type a Group
Message...  

## Exhibit 3

Plaintiff's suggestion to bring in the home care person while the defendant is out of the
country is rejected by the defendant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Carol Q**

Cindy when u get a chance can u call the place that kendra came from and let them know I am still waiting for the deposit back I gave for dad. They dont seem to know how to dial my number. I expect that money to be returned immediately they have been paid in full last month.
Need that money back to open his savings acct for funeral expenses in the furture.

2/17/20 5:04 PM

Hi Carol, I'll call them tomorrow.

 Type a Group Message...  

**Exhibit 4**

COMPLAINTJURY TRIAL DEMANDED - 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



You should read the "things" that I email you carol.

2/24/20 9:58 AM

**Carol Q**

Cindy I appreciate the fact that u believe someone outside the family more then I.  I also appreciate the fact that I told u that 2 times I stopped by and both times kendra was outside in the hall on the phone.  If you would ask dad if he liked kendra there, he would tell you no.  Dad does go out to eat but normally I do pay for him so as far as getting yummy food he

 Type a Group Message...  

**Exhibit 5**

COMPLAINTJURY TRIAL DEMANDED - 16



no. Dad does go out to eat but normally I do pay for him so as far as getting yummy food he does. I am thinking you need to realize you are at a distance and you need to appreciate dad is happy unless you want to consider him going into a nursing home, if you feel he is not being taken care of properly.

As far as kendra is concerned when I return believe me I will be filing a complaint with her agency and senior advocate because if she felt that way they should have be speaking to me as his POA but for some reason they never would return my calls

Type a Group Message...

## Exhibit 6

The defendant believes that no one else can have any input regarding their father.



Here's the numbers that don't make sense.  This is why I think Dad should currently be eating a tasty meal every day. This is why I am unhappy about his boring diet
 At his age with good teeth and good health, he should be having delicious food all the time.  Carol, I know you work so hard at caring for dad. But I think he is entitled to pleasures he can afford and is not getting.

## **Exhibit 7**

Plaintiff tries to explain why the food is so important.



Heres the numbers..

Has anyone talked to Dad today? He didnt answer when i called earlier.

**Carol Q**

Cindy he is very happy if u feel you can do better then move out here and you cook for him. We tried kendra and it didnt work so while I appreciate you googling all day and sending me things I'm done with this. All the healthy things u left in his frig they went bad and I threw them away.

  

## Exhibit 8

Defendant easily admits that she didn't bother making sure

her father ate high quality food available in the apartment.

She just threw it out in the trash.



**Exhibit 9**

Defendant proves she has no concept of the importance of

quality-of-life pleasures at age 91. This was the time when

her father deserved and wanted the best meals he could have.



## Exhibit 10

Defendant dumps father's ashes into a stream. Plaintiff was

not included in the dispersion of the ashes.

COMPLAINTJURY TRIAL DEMANDED - 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINTJURY TRIAL DEMANDED - 22

FILED

DEC 27 2023

U.S. DISTRICT COURT
DISTRICT OF DELAWARE



**P**

US POSTAGE AND FEES PAID
2023-12-22
19711
C4739329
Commercial
1.0 LB ZONE 1



0901000008940

## USPS PRIORITY MAIL

CINDY MILLER
18 LAMATAN RD
NEWARK DE 19711-2316

**0005**

C012



SHIP TO: OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
844 N KING ST UNIT 18
WILMINGTON DE 19801-3519

### USPS ADULT SIG 21 OR OLDER



**9468 1361 0553 6988 5616 82**

